**David Eugene DICK**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 28, 2010.

Decided Aug. 5, 2010.

---

Terrance M. Edwards, Asst. Counsel and Harold H. Cramer, Asst. Chief Counsel, Harrisburg, for appellant.

W. Kim Hill, Bloomsburg, for appellee.

BEFORE: COHN JUBELIRER, Judge, and McCULLOUGH, Judge, and KELLEY, Senior Judge.

## OPINION BY Judge COHN JUBELIRER.

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (DOT) appeals from an order of the Court of Common Pleas of the 26th Judicial District (Columbia County Branch) (trial court) sustaining the appeal of David Eugene Dick (Licensee) from a one year suspension of his operating privileges following his 2009 conviction for Driving under the Influence of Alcohol (DUI). DOT issued the suspension, pursuant to Section 3804(e)(2) of the Vehicle Code,[1] on the basis of certified conviction reports showing that Licensee had been convicted of DUI in Maine less than ten years before he committed his most recent violation, disqualifying him from the exception found at Section 3804(e)(2)(iii) for licensees without prior offenses. Licensee appealed this suspension to the trial court. After hearing testimony and receiving evidence indicating that Licensee was arrested for DUI in Maine in 1985, but did not receive credit for satisfying the charges until 2004, the trial court sustained the appeal and rescinded the suspension. DOT appeals this order, claiming that the trial court abused its discretion in holding that Licensee presented clear and convincing evidence to rebut the certified conviction report introduced by DOT.

Licensee testified that he spent the summer of 1985 working in Maine, while intending to return to college in Ohio that fall. (Hr'g Tr. at 9, January 22, 2010, R.R. at 19a.) On June 28, 1985, he was arrested and subsequently charged with operating a motor vehicle with a blood alcohol concentration in excess of .10%. The record is not clear as to precisely what happened next, but it appears that Licensee consulted a Maine attorney, who informed him that he could simply return to Ohio without addressing the DUI charge because Maine and Ohio did not have a reciprocity agreement. (Hr'g Tr. at 10, R.R. at 20a.) Shortly thereafter, Licensee moved to Pennsylvania, turned in his Ohio driver's license, and applied for a Pennsylvania license. Unfortunately for Licensee, Maine and Pennsylvania *did* have a reciprocity agreement and, when DOT discovered that Licensee was still serving his Maine suspension, it canceled his Pennsylvania license effective August 1, 1986.

Licensee testified that, after DOT cancelled his license, he began contacting various unidentified officials in Maine in an attempt to resolve the DUI charge. (Hr'g Tr. at 14, R.R. at 24a.) He testified that he was eventually told by an unnamed official that he could resolve the charges by completing an ARD-type DUI class and sending the documentation to Maine.

1. 75 Pa.C.S. § 3804(e). Section 3804(e) provides:

(1) The department shall suspend the operating privilege of an individual under paragraph (2) upon receiving a certified record of the individual's conviction of or an adjudication of delinquency for:
(i) an offense under section 3802; or
(ii) an offense which is substantially similar to an offense enumerated in section 3802 reported to the department under Article III of the compact in section 1581 (relating to Driver's License Compact).

(2) Suspension under paragraph (1) shall be in accordance with the following:
(i) Except as provided for in subparagraph (iii), 12 months for an ungraded misdemeanor or misdemeanor of the second degree under this chapter.
. . .
(iii) There shall be no suspension for an ungraded misdemeanor under section 3802(a) where the person is subject to the penalties provided in subsection (a) and the person has no prior offense.

75 Pa.C.S. § 3804(e)(2).

(Hr'g Tr. at 14, R.R. at 24a.) The record indicates that Licensee graduated from Columbia County's DUI Counter–Measures Program in 1991. (Certificate of Completion, November 17, 1991, R.R. at 71a.)[2] Licensee testified that he sent his certificate of completion to the appropriate officials in Maine. (Hr'g Tr. at 14, R.R. at 24a.) Licensee did not provide any evidence to support this testimony, or to prove that the appropriate officials received the documents. Maine did not remove the suspension from his license at that time.

Licensee testified that sometime "in the 2000s," a Maine Assistant District Attorney told him over the phone that, as far as Maine was concerned, Licensee had failed to appear and was considered a fugitive. (Hr'g Tr. at 15, R.R. at 25a.) In 2004, Licensee returned to Maine and turned himself in at a Sheriff's office in Knox County, where he spent the night in jail and paid a fine to satisfy the DUI charge. Although Licensee's testimony was not entirely clear as to exactly what took place during the visit to Knox County, DOT introduced a certified conviction report from the Knox County Superior Court in Maine indicating that, on November 30, 2004, Licensee pled guilty and was convicted of DUI. (Abstract of Superior Court Record of Violation of Motor Vehicle Law, R.R. at 58a.) Following his 2004 plea, DOT suspended Licensee's license for one year pursuant to the Driver's License Compact,

75 Pa.C.S. § 1581. Licensee appealed this suspension to the trial court, which dismissed his appeal.[3] Licensee did not appeal the trial court's order.

Licensee was arrested in Pennsylvania for DUI in 2008 and pled guilty to the charge in 2009. Shortly after his plea DOT notified him that, due to his 2004 DUI conviction in Maine, his license had been suspended for twelve months. Licensee, who pled guilty under the impression that his license would not be suspended, appealed the suspension to the trial court, arguing that his most recent DUI had occurred in 1985, well outside the ten year look-back window imposed by 75 Pa. C.S. § 3806(b). At the hearing DOT introduced, among other exhibits, certified conviction reports from Maine and Pennsylvania showing that Licensee had been convicted of DUI in 2004 in Maine, and had committed a second violation in Pennsylvania on October 13, 2008. These certified conviction reports failed to persuade the trial court, which granted Licensee's appeal and rescinded his suspension. DOT now appeals the trial court's order to this Court.[4]

■ In general, DOT is required to issue a license suspension under Section 3804(e) to any licensee convicted of DUI under Section 3802 of the Vehicle Code. 75 Pa.C.S. §§ 3802, 3804(e). This general rule is limited by Section 3804(e)(2)(iii),

2. Neither party provided this Court with a description of the particulars of Maine's DUI program for first-time offenders. The trial court determined that Licensee entered an ARD-type program and nothing in the record before this Court is inconsistent with that determination; therefore, we accept that this characterization is accurate.

3. Licensee's appeal was dismissed by stipulation of the parties, per an order entered by the same judge who entered the order currently being appealed to this Court. *Dick v.*

*Department of Transportation,* (26th Judicial District (Columbia County Branch) Civil Action No. 310–2005, filed April 28, 2005).

4. Our review is limited to determining whether the trial court committed an error of law or an abuse of discretion, and whether its findings of facts were supported by substantial evidence. *Capone v. Department of Transportation, Bureau of Driver Licensing,* 875 A.2d 1228, 1230 n. 1 (Pa.Cmwlth.2005).

which prohibits DOT from imposing a suspension if the licensee has no prior offense, and was convicted of an ungraded misdemeanor. For the purposes of determining a DUI offender's eligibility for this exception, the term "prior offense" includes:

> Any conviction, adjudication of delinquency, juvenile consent decree, acceptance of Accelerated Rehabilitative Disposition[5] or other form of preliminary disposition *within the ten years before the present violation occurred.*

75 Pa.C.S. § 3806(b) (emphasis added); *see also Commonwealth v. Haag*, 603 Pa. 46, 54–55, 981 A.2d 902, 907 (2009) (holding that when calculating the defendant's prior record for the sentence enhancement and suspension provisions of 75 Pa.C.S. § 3804, the definition of prior offense is provided by 75 Pa.C.S. § 3806(b) and not 3806(a).)

 Once DOT introduces certified conviction records showing that a licensee's record merits a suspension, it has established a prima facie case and the burden shifts to the licensee, who must then prove by clear and convincing evidence that the conviction did not occur. *Roselle v. Department of Transportation, Bureau of Driver Licensing*, 865 A.2d 308, 314 (Pa. Cmwlth.2005); *Glidden v. Department of Transportation, Bureau of Driver Licensing*, 962 A.2d 9, 12 (Pa.Cmwlth.2008). Clear and convincing evidence is defined as "evidence that is so clear and direct as to permit the trier of fact to reach a clear conviction, without hesitancy, as to the truth of the facts at issue." *Mateskovich v. Department of Transportation, Bureau of Driver Licensing*, 755 A.2d 100, 102 n. 6 (Pa.Cmwlth.2000) (quoting *Sharon Steel Corporation v. Workmen's Compensation Appeal Board*, 670 A.2d 1194, 1199 (Pa.

Cmwlth.1996)). To rebut a prima facie case established by a certified conviction record, the licensee must either challenge the regularity of the record, or introduce direct evidence showing that the record is incorrect and that the conviction was never entered. *Id.* at 102.

At the hearing, DOT introduced certified records showing that Licensee was convicted of DUI in Maine in 2004 and in Pennsylvania in 2009. (Abstract of Superior Court Record of Violation of Motor Vehicle Law, November 30, 2004, R.R. at 58a; Report of the Clerk of Courts, May 12, 2009, R.R. at 39a.) These records show that Licensee's driving record required DOT to impose a one year suspension pursuant to Section 3804(e)(2). Thus, DOT established its prima facie case, shifting the burden to Licensee to show by clear and convincing evidence that the convictions did not occur.

The trial court stated that it reinstated Licensee's license because it rejected DOT's evidence and found Licensee's testimony to be credible. (Trial Ct. Op. at 2, R.R. at 90a.) However, this is not an entirely accurate characterization of what happened at the hearing. The parties agreed as to the central facts: Licensee was arrested in Maine and charged with DUI in 1985; shortly after his arrest, he entered an ARD-type program; Maine did not credit him with completion of the program; in 2004, he pled guilty to the DUI, paid a fine, and served one night in jail to satisfy the charges; in 2009, he was again convicted of DUI, this time in Pennsylvania. The issue confronting the trial court was not whose testimony or evidence to credit, but whether the set of uncontested facts before the court satisfied the legal

---

5. As a general rule, acceptance of ARD does not count as a conviction. Pa. R.Crim. P. 312, *comment.* However, the plain language of 75 Pa.C.S. § 3806 requires that entry into an ARD program be considered a prior offense for the purposes of 75 Pa.C.S. § 3804. *Commonwealth v. Zampier*, 952 A.2d 1179, 1182 (Pa.Super.2008).

definition of "prior offense" as described in 75 Pa.C.S. § 3806(b). Although the trial court phrased the issue in terms of a credibility determination, the decision below was actually a conclusion of law; therefore, our review is plenary. *Fell v. Department of Transportation, Bureau of Motor Vehicles*, 925 A.2d 232, 239 (Pa.Cmwlth.2007) (noting that whether evidence is clear and convincing is a question of law).

Licensee argues that the trial court was correct that, if Licensee was accepted into an ARD program in 1985 and subjected to various collateral consequences in the following years, his conviction date cannot be calculated from 2004 for the purposes of Section 3806. In keeping with the plain language of Section 3806, and consistent with the interpretation of the Pennsylvania Superior Court, we hold that even if Licensee entered an ARD-type program in 1985, the date of any subsequent conviction entered on those charges would be the definitive date for determining whether the conviction was a prior offense for purposes of Section 3806(b).

While there is no controlling case law on this issue from our Court, the Pennsylvania Superior Court recently delivered several opinions dealing with the interaction between ARD acceptance dates and conviction dates in the context of the ten year look-back period imposed by Section 3806. In *Commonwealth v. Zampier*, 952 A.2d 1179 (Pa.Super.2008), the Superior Court held that when a defendant accepts ARD, but is subsequently removed from the program and convicted, the conviction will be considered a prior offense under Section 3806 if the conviction occurred within the ten year period, even if the ARD acceptance did not occur within that time period. *Id.* at 1182. Shortly after *Zampier*, the Superior Court decided *Commonwealth v. Love*, 957 A.2d 765 (Pa.Super.2008), in which it held that a defendant who accepted ARD, then committed a second offense, but was removed from the ARD program before being sentenced for the second offense, had a prior offense within the meaning of Section 3806 based on his acceptance into ARD. *Id.* at 771. We agree with the Superior Court that, so long as the licensee has *either* accepted ARD *or* been convicted in the previous ten years, he has a prior offense within the meaning of Section 3806.

■ The trial court believed that the legislature could not have intended to count a twenty-five year old DUI violation as a prior offense under Section 3806. However, we cannot agree with this interpretation. Preliminarily, we observe that, where the language of a statute is plain and unambiguous, as is the case here, courts may not set aside that language in order to pursue their own interpretation of what the legislature actually intended. *Tobin v. Radnor Township Board of Commissioners*, 142 Pa.Cmwlth. 567, 597 A.2d 1258, 1264 (1991). Further, we conclude that the Superior Court's interpretation of Section 3806 is consistent with the plain language of Section 3806, as well as with the intent of the legislature.

■ Recidivist enhancements are justified on the grounds that a defendant, who has once had the benefit of the penal system, yet chooses to ignore that benefit and reoffend, merits harsher punishment than a first offender. *Commonwealth v. Dickerson*, 404 Pa.Super. 249, 590 A.2d 766, 771 (1991). By drafting Section 3806 to turn, not on the date of the conduct, but on the date of the conviction, the legislature signaled that, for the purpose of license suspensions, it is the beneficial effect of the conviction or ARD acceptance that should be considered. Licensee twice had the benefit of that process. Five years before the 2009 offense, he pled guilty to DUI, spent a night in jail, and paid a fine. The

sting of that process should have been sufficiently fresh in his mind to deter him from reoffending. The legislature has unambiguously expressed that individuals who ignore such a reminder of the consequences of violating the DUI laws must be deprived of their driving privileges for twelve months in order to preserve the safety of others.[6]

Once DOT concluded that Licensee had been convicted of DUI in 2004, and had reoffended less than ten years later, DOT was required by Section 3804(e)(2)(i) to suspend his license, regardless of the date he committed the original violation or the date he entered the ARD program in Maine. To succeed on his appeal, Licensee was required to prove, by clear and convincing evidence, that he was not convicted in 2004. Because DOT established the existence of that conviction by introducing a certified conviction record, Licensee could only succeed by challenging the regularity of the certified conviction record or by introducing direct evidence to show that the record was incorrect. *Mateskovich*, 755 A.2d at 102.

At no point did Licensee introduce any evidence or provide any testimony to prove that he was not convicted in Maine in 2004. Instead, Licensee argues that he was subjected to a variety of proceedings prior to 2004, which depended on his having already been convicted of DUI. This evidence does not directly rebut the certified conviction report and only *suggests* that, if he was convicted in 2004, that conviction was invalid. Thus, we conclude that Licensee's evidence consists primarily of an impermissible collateral attack on his 2004 Maine conviction.

■ On an appeal from a DOT suspension under Section 3804(e), a trial court must limit itself to determining whether the conviction in question actually occurred, and may not entertain a collateral attack on the validity of the underlying conviction. *See Aten v. Department of Transportation, Bureau of Driver Licensing*, 168 Pa.Cmwlth. 251, 649 A.2d 732, 735 (1994). The trial court may not conduct any inquiry into whether the licensee *should* have been convicted. *Department of Transportation, Bureau of Driver Licensing v. Barco*, 656 A.2d 544, 546 (Pa. Cmwlth.1994).

The record indicates that Licensee received notice that he had been convicted in 2004, and that he chose not to challenge the validity of that conviction in a Maine court. (Hr'g Tr. at 19–20, R.R. at 29a–30a; Notice of Court Ordered Suspension, December 21, 2004, R.R. at 45a.) Licensee may not avoid the consequences of that choice by asking this Court to second-guess the courts of Maine. Thus, the role of the trial court was simply to determine whether Licensee was convicted in 2004. Any evidence suggesting that the Maine conviction was improper was, therefore,

6. The dissent argues that this Court should grant Licensee's appeal on the grounds that our reading of the statute leads to an "absurd and harsh result." *Dick v. Department of Transportation, Bureau of Driver Licensing*, 3 A.3d 703, 712 (Pa.Cmwlth.2010)(Kelley, S.J., dissenting) (citing *Secretary of Revenue v. John's Vending Corporation*, 453 Pa. 488, 494, 309 A.2d 358, 362 (1973)). However, the cases cited by the dissent grant this Court only the authority to pursue the *intent of the legislature* where failure to do so would lead to an absurd result; they do not

grant us the discretion to ignore the meaning intended by the legislature, as set forth by the plain language of the statute, simply because we believe it leads to an unfair result. The legislature determined that it is the conviction process, not the guilty conduct, which must be considered for purposes of determining whether an individual is a prior offender. Where, as here, the meaning of the plain language of the statute is consistent with the intent of the legislature, *John's Vending Corporation* does not grant us the authority to second-guess the legislature.

outside of the trial court's scope of review. As Licensee did not present any evidence or testimony that directly contradicted the certified conviction report showing that he pled guilty in 2004, we have no choice but to hold that the trial court lacked substantial evidence to find that Licensee carried his burden and rebutted DOT's case by clear and convincing evidence.

Even if Licensee's case did not consist primarily of an improper collateral attack, we would be compelled to conclude that the trial court erred in finding that Licensee proved, by clear and convincing evidence, that his driving record did not require a suspension.

Beyond his own testimony, which was largely consistent with DOT's evidence, Licensee relies on two primary pieces of evidence. First, Licensee relies on a document indicating that DOT cancelled Licensee's newly acquired Pennsylvania license in 1986, presumably in response to his Maine suspension. (Certification Statement, February 25, 1998, R.R. at 69a.) Licensee argues that, since his Maine license could only have been suspended as a result of a conviction, this document provides clear and convincing evidence that he was convicted sometime shortly after his 1985 arrest. However, under Maine law at the time of Licensee's arrest, license suspensions were not issued only, or even primarily, as a consequence of a criminal conviction. When Maine law enforcement officers made DUI arrests, they would forward a report to the Secretary of State (Secretary). 29 M.R.S. § 1311–A, *repealed by*, 1993 Me. Laws ch. 683, § A–1.[7] If the Secretary determined that the violation had occurred, the Secretary would issue a suspension, regardless of the outcome of the criminal case. *Id.* Section

1572 of the Vehicle Code, 75 Pa.C.S. § 1572, which authorized DOT's 1986 cancellation of Licensee's license, provided then, as it does now, that DOT may cancel a license if "the licensee was not entitled to the issuance" of the license. 75 Pa.C.S. § 1572. Section 1503 of the Vehicle Code, 75 Pa.C.S. § 1503, provided then, as it does now, that an individual is not entitled to a license if that person's "operating privilege is suspended or revoked in this or any other state." 75 Pa.C.S. § 1503(a)(1). Thus, in 1986 when DOT canceled Licensee's license on the basis of his Maine license suspension, it did not need to prove that Licensee had been convicted of any offense in Maine, but only that his Maine license was suspended. Thus, Licensee's license would have been suspended in Maine in 1986 regardless of whether he was accepted into an ARD-type program or formally convicted and sentenced, and this suspension would have resulted in the 1986 cancellation by DOT. Accordingly, we must conclude that the evidence showing that DOT canceled Licensee's license in 1986 is not in conflict with DOT's evidence of Licensee's conviction in Maine in 2004.

Additionally, Licensee received a letter from Maine's Secretary, dated December 29, 2004. (Letter from Maine Secretary of State to Licensee (December 29, 2004), R.R. at 53a.) The letter states that, when Licensee's Maine driving privileges were reinstated, three suspensions were removed from his record. One of these suspensions, dated September 7, 1998, is described as a "suspension for conviction." (Letter from Maine Secretary of State to Licensee (December 29, 2004), R.R. at 53a.) This document could be read to imply, as Licensee now argues in his brief before this Court, that he served a suspen-

---

7. We further note that Dick's Maine license was suspended on November 11, 1985, due to his failure to appear. (Letter from Maine Secretary of State to Licensee, December 29, 2004, R.R. at 53a.) This suspension could also have triggered the cancellation of his Pennsylvania license.

sion for a DUI conviction in Maine that occurred prior to September 1998. However, Licensee did not make any arguments regarding this document before the trial court and, even in his brief to this Court, makes no attempt to explain the significance of the 1998 date. He, in effect, leaves the document to speak for itself. Standing alone, without explanatory testimony or corroborating evidence, it is not clear that the conviction the document refers to is related to the 1985 DUI charge.

Clear and convincing evidence is the highest standard in the civil system. *Suber v. Pennsylvania Commission on Crime and Delinquency*, 885 A.2d 678, 682 (Pa.Cmwlth.2005). We cannot weaken this standard by holding that a single piece of uncorroborated evidence, which contradicts DOT's evidence only by implication, is sufficient to meet that burden.

After reviewing the record, it appears that the trial court's decision to grant Licensee's appeal was motivated by its conclusion that Licensee did what he could to address his DUI charge, but was simply unable to navigate Maine's bureaucracy. However, Section 3804 neither requires

DOT to discern whether the timing of the conviction was the fault of the offender, nor grants DOT the authority to refuse to issue the suspension if it was not. Thus, the trial court fashioned what amounts to an equitable remedy and refused to uphold an agency action it believed was unjust. (*See* Trial Ct. Op. at 3–4, R.R. at 91a–92a ("[In this case,] the facts belie fairness ... More people within the burgeoning bureaucracy should use discretion [8] in treating citizens fairly").) Although understandable, this is not within the trial court's discretion. *See Department of Transportation, Bureau of Traffic Safety v. Verna*, 23 Pa.Cmwlth. 260, 351 A.2d 694, 695 (1976) (holding that a trial court, on review of a DOT decision, is limited to determining whether a violation occurred, and may not reverse because of the perceived unfairness of the penalty).

Licensee did not present any documentary evidence showing that he was not convicted in 2004, nor did he offer direct testimony[9] to that effect. Accordingly, we conclude that the trial court erred in finding that Licensee had proven, by clear and convincing evidence, that the convictions established as part of DOT's prima facie

---

**8.** The trial court incorrectly assumes that DOT had the discretion to refuse to impose a suspension, which contradicts the plain language of the statute: "The department *shall suspend* the operating privilege of an individual under paragraph (2) upon receiving a certified record of the individual's conviction ..." 75 Pa.C.S. § 3804(e)(1) (emphasis added).

**9.** DOT argues that, as a matter of law, a licensee's testimony, when standing alone, cannot constitute clear and convincing evidence within the context of an appeal taken from a license suspension issued under 75 Pa.C.S. § 3804(e). Our research has not uncovered any precedent that directly controls that question. There is case law dealing with this issue in different contexts, some of which have reached divergent results. *See Fell*, 925 A.2d at 239 ("This Court has held that uncor-

roborated testimony is insufficient to meet the [clear and convincing] standard"); *but see Matter of Larsen*, 532 Pa. 326, 333, 616 A.2d 529, 532, (1992) ("[For the clear and convincing evidence standard,] there is no mechanistic corroboration requirement; rather a charge could be sustained on the basis of the uncorroborated testimony of a single credible witness ...").

However, we do not reach the merits of that argument, as Licensee's testimony is not inconsistent with the 2004 conviction date reflected in the certified record. We do note, however, that in the overwhelming majority of cases in which we have upheld a trial court's order sustaining an appeal from a license suspension, we have done so based on documentary evidence which directly rebuts DOT's prima facie case. *See, e.g., Department of Transportation, Bureau of Driver Licensing v. Diamond*, 151 Pa.Cmwlth. 351, 616 A.2d

case did not occur, and in assuming that there could be only one prior offense date for the purpose of triggering collateral consequences, as well as in accepting what was, in effect, a collateral attack on Licensee's 2004 conviction.

For the foregoing reasons, the trial court's order is reversed, and Licensee's suspension is reinstated.

### ORDER

**NOW,** August 5, 2010, the order of the Court of Common Pleas of the 26th Judicial District (Columbia County Branch) in the above-captioned matter is hereby **RE-VERSED,** and David Eugene Dick's license suspension is **REINSTATED.**

DISSENTING OPINION BY Senior Judge KELLEY.

I respectfully dissent.

It is well settled that, "[i]n order to avoid an absurd and harsh result, a court may look beyond the strict letter of the law to interpret a statute according to its reason and spirit and accomplish the object intended by the Legislature." *Secretary of Revenue v. John's Vending Corporation,* 453 Pa. 488, 494, 309 A.2d 358, 362 (1973) (citations omitted). *See also Department of Transportation v. Lewis,* 506 Pa. 96, 102, 484 A.2d 370, 373–374 (1984) ("[W]e will not assume that the General Assembly intended a senseless result. 1 Pa.C.S. § 1922(1) ....") (citations omitted).

As noted by the Majority, 75 Pa.C.S. § 3806(b), provides a ten year look-back window in determining whether a licensee has committed a prior offense for the suspension enhancement provisions of 75 Pa.

C.S. § 3804(e) to apply. However, I believe that it is patently absurd to apply these enhancement provisions to an offense that occurred more than twenty-five years ago outside of this jurisdiction.

Accordingly, unlike the Majority, I would affirm the trial court's order.[1]

---

1105, 1108 (1992) ("[A] certified copy of an acquittal is sufficiently clear and convincing to rebut the presumption of a conviction which arises from the introduction of DOT's certified record"); *Fine v. Department of Transportation, Bureau of Driver Licensing,* 694 A.2d 364, 367 (Pa.Cmwlth.1997) ("Licensee's submission of a certified copy of the appeal [overturning his conviction] is suffi-

ciently clear and convincing to rebut the presumption of a conviction").

1. It is well settled that this Court may affirm on other grounds where the grounds for affirmance exist. *Karl Smith Development Company v. Borough of Aspinwall,* 125 Pa.Cmwlth. 687, 558 A.2d 181 (1989), *petition for allowance of appeal denied,* 525 Pa. 614, 577 A.2d 545 (1990).